```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL A. CEA and RAYMOND BOWLEY,           :
                                            :
                Plaintiffs,                 :       11-cv-3791 (NSR)
        -against-                           :
                                            :       MEMORANDUM OPINION
RUSSELL POTTER, KARL BRABANEC,¹ and         :       AND ORDER
ACCESS 23 TV,                               :
                                            :
                Defendants.                 :
-----------------------------------------------------------------X
```

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Daniel A. Cea ("Cea") and Raymond Bowley ("Bowley"), former members of Defendant Access 23 TV ("Access 23" or "the station"), a public access television station, commenced the instant action under 42 U.S.C. § 1983 against Access 23, the Mayor of the City of Port Jervis, Russell Potter ("Potter"), and the Town Supervisor of the Town of Deerpark, Karl Brabanec ("Brabenec") (collectively, "Defendants"), seeking monetary damages for alleged violations of their First Amendment right to free speech. Specifically, Cea asserts that Potter and Brabenec violated his rights by allegedly conditioning their support of the station upon his removal, Cea asserts that Access 23 violated his rights by removing him due to the content of his speech, and Bowley asserts that Access 23 violated his rights by removing him after he defended Cea's free speech rights.

Potter and Brabenec now move separately for summary judgment under Federal Rule of Civil Procedure 56, asserting there is no genuine dispute of material fact and they are entitled to judgment on Cea's claim against them as a matter of law. Potter avers there is no admissible evidence supporting the allegation that he would not renew Access 23's lease unless Cea was

---

¹ It appears this defendant's last name is misspelled in the caption, as he spelled his name "B-R-A-B-*E*-N-E-C" for the record at his deposition on March 29, 2013. (Sussman Affirmation Ex. 1, at 4:10.)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/8/2014

silenced and there is no allegation of joint activity between him and Access 23.  Brabenec avers there is no admissible evidence supporting the allegation that Access 23's programming decisions were influenced by his purported threat to refuse to provide Town funding or otherwise showing joint activity between him and Access 23.  For the following reasons, the motions for summary judgment are granted.

## I. THE FACTS

The facts are gleaned from the parties' 56.1 statements, affidavits, and exhibits submitted with this motion,[2] and are not in dispute except where noted.

Access 23 is the public access station for the City of Port Jervis ("City") and the Town of Deerpark ("Town"), New York.  It began operations sometime during the 1980s.  Bowley joined the station as its eighth or ninth member in the early 1990s.  He aired a religious show that played religious tapes.  In 1999, he began a second show called "Wake Up America" during which he played recordings of various other people but never spoke personally.  Cea joined Access 23 in January 2009 when the station had approximately 24 members, roughly half of whom were active.  Sometime in 2009, Cea began hosting a live program called "Voice of the People" during which he would discuss political issues and take viewer calls.  In December 2009 Cea was elected to the Board of Trustees ("Board") for Access 23.  Other Board members included sergeant-at-arms Edward Keys ("Keys"), station manager Jay Ortiz ("Ortiz"), and station president Sal Russo ("Russo").

Brabenec was elected to the Deerpark Town Board ("Town Board") in November 2007 and began serving as a board member in January 2008.  He was elected Town Supervisor in

---

[2] The Court notes its displeasure with the parties' failure to follow the Court's individual rules of practice with respect to their Rule 56.1 statements and counterstatements of material facts, (Rule 3.G.iii.), and with respect to Plaintiffs' and Potter's improper submissions of entire deposition transcripts, (Rule 3.G.iv.).

November 2009 and began serving in January 2010.  Cea, the Democratic nominee for Supervisor in 2009, lost the election to Brabenec.  Cea was also a losing write-in candidate for Supervisor in the 2011 election.  During 2009, Cea was openly critical of Brabenec and the Town government on his live television show, and Brabenec complained to Russo that Cea was spreading misinformation.  In October 2009, Brabenec and a political coalition of candidates showed up unannounced to be audience members on Cea's show and correct any misinformation being given out.

  In or around February 2010, Brabenec avers that Cea requested funding for Access 23 from the Town.  Brabenec purportedly replied that to consider this request, the Town Board needed a formal proposal from the station along with a copy of the station's annual budget, programming description, and schedule.  On April 12, 2010, Brabenec emailed one of the station's secretaries concerning Cea's request for funding, noting that the Town had yet to receive the requisite information.  Likewise, Brabenec testified that on three separate occasions in 2010, Russo approached Brabenec with verbal funding requests.  Brabenec purportedly asked for a written proposal with a budget to submit to the Town Board, which Russo claimed was difficult to accomplish due to infighting with Cea.  Access 23 never submitted a proposal.

  Potter was a member of the Port Jervis City Council ("Council") from January 1, 2006, through December 31, 2009.  He has been Mayor of the City since January 1, 2010.  The City has always allowed Access 23 to operate in a City-owned building, paying either no rent or $1 per month.  Access 23 was supposed to pay its own gas and electric bills and carry its own insurance.  Potter testified at deposition that the station was paying the utilities out of its franchise fee, yet was not current on these payments from 2010 through 2012.  For an unspecified period of time, the City provided a quarterly stipend of $500 to the station.  Potter

3

avers that the City ceased these payments in mid-2009 after providing notice on May 18, 2009, that the Council voted (a) to cease making the $500 donations, (b) to serve on the station a notice to vacate the premises, and (c) to require the station to remove the City's name from the not-for-profit corporate name. Plaintiffs assert that the City provides no documentation showing it ceased paying the stipend. The station was never evicted from the premises.

The City gave the May 18, 2009, notice to the station because the Council and previous Mayor were concerned about ongoing conflicts within the Access 23 organization. These conflicts became public beginning in 2009 when station members spoke about the internal disputes at Council meetings. In fact, throughout 2009 and 2010, Cea, Bowley, Russo, Ortiz, Keys, and numerous other Access 23 members were involved in filing lawsuits, criminal complaints, and internal grievances against each other and/or being defendants in lawsuits, bound by restraining orders, and the subjects of grievances. As a result of the internal grievances, some members were removed from leadership positions while others were expelled from the station and barred from the premises. During some meetings, police were even called to the station due to disputes.

In June 2010, Cea and other Access 23 board members attended a meeting with Potter. Potter asserts that Ortiz, Cea, Russo, and one other Board member expressed a desire for physical upgrades to the City-owned building that Access 23 used, but that Potter told them the City had no funds available. Potter avers this was the only meeting he had with Russo. Plaintiffs assert that Potter suggested a separate board should oversee Access 23's Board, but that there were no discussions about capital improvements.

On or about August 4, 2010, Access 23 held its regular monthly membership meeting. Plaintiffs offer affidavits from three members who were present at the meeting. The affiants

4

state that Keys said Brabenec had offered to provide funding to Access 23 and/or match the City's funding if the station removed Cea's show and expelled Cea from station membership. One affiant claims that Keys subsequently said Potter wanted Cea removed, the second claims that Russo instead of Keys made this statement, while the third claims both Russo and Keys made this statement. One affiant also claims that Potter conditioned the renewal of the station's lease on Cea's removal.[3] At his deposition, Bowley testified that he was also present at this meeting, that Keys said Brabenec would offer funding if Cea was removed, and that Russo said Potter would renew the lease only if Cea was removed. Russo, Keys, Brabenec, and Potter all deny making the above statements.

     Brabenec in reply offers a video recording of the August 4, 2010, meeting along with a transcript covering two minutes of the meeting. The conversation over Cea's show, however, lasted more than twelve minutes. Throughout the discussion of Cea's show there are many gaps in the audio and many statements are inaudible or unintelligible. Nonetheless, the following is clear. Russo and Ortiz discussed the possibility of having a show rebutting the information presented on Cea's show. Russo also mentioned his plan to meet with Potter. Ortiz expressed the belief that "if you're slandered you should pursue the individual who slandered you," and stated, "if it isn't true it's slander and [Cea] I believe opens the lines . . . ." Keys asserted he spoke to Potter numerous times, and said one reason "they are pissed is because of what had been directed toward, not only the Port Jervis Council and the Mayor, but also the Town of Deerpark." Keys also mentioned that Brabenec wanted to give the station the same amount of money Port Jervis was giving. He also pointed out that the station was "begging" the City and

---

[3] A fourth affiant, the station's former president, asserts more generally that she understood from Keys and Russo's comments that local politicians conditioned their support for Access 23 on Cea's removal.

Town for money.  When a station member asked, "do you really think that even if we stop doing that they are going to give us anything?  They already got what they wanted," Keys responded, "Of course.  They always have."  Russo subsequently asserted the station still got its money from the City even after Cea's show came on the air.

On August 10, 2010, according to Cea's deposition, Ortiz called Cea and said that Cea's show was being removed from the air by Potter and Brabenec, who had taken over the station.  Cea testified that he went to the station on August 11, 2010, to do his next show, but the control room director told him he was not allowed to air the show.  Cea further testified that on August 12, 2010, Russo called Cea asking why Cea had to "piss . . . off" Potter and Brabenec and stating Cea would be arrested for trespassing if he entered the station's building.  (Cea Dep. 48:7-17.)

On or about August 15, 2010, Access 23's recording secretary apparently sent Cea a letter on Russo's behalf informing Cea of his immediate suspension pending an investigation prompted by several grievances filed against him.  The letter stated that Cea could contact Russo to find out his rights under the station by-laws.  Potter proffers written grievances from various Access 23 members, apparently submitted May 10, July 14, and September 1, 2010, complaining of Cea's behavior at station meetings on April 28 and July 7, 2010, and complaining of his harassing phone calls meant to convince other members to ban Keys from the station.  On September 1 and 2, 2010, Access 23 also apparently sent Bowley suspension letters, one instructing him to contact Russo so he could receive copies of grievances lodged against him.

On September 16, 2010, Bowley and Cea joined other members in signing a letter to Potter expressing concern over unsupervised minors at the station premises.  This letter also accused unnamed Access 23 members and board members of being "convicted felons, drug users and alcohol abusers and even a possible child molester."  (Posner Aff. Ex. F.)  Cea testified that

he did not know who prepared the letter, nor did he recall the name of a minor's parent who asked him to sign the letter. He also testified that he heard Keys met his wife in rehab, that he heard Russo was a convicted felon, and that his former co-host personally witnessed another member in possession of marijuana. Potter asserts he never received this letter.

On October 27, 2010, the station sent both Cea and Bowley letters informing them that their suspensions were made permanent because neither one responded to the suspension letters or contested the grievances made against them. The letters offered to play taped versions of Plaintiffs' shows after Ortiz previewed the tapes. The letter sent to Cea claimed he received his purportedly certified August 15, 2010, suspension letter on August 17, 2010, and the letter sent to Bowley asserted he received his purportedly certified September 2, 2010, suspension letter on September 3, 2010. On November 1, 2010, Cea replied that he had not in fact received the August 15 letter. He also wrote that he was prepared to resume his live show instead of sending in recordings. Cea testified that he never saw the August 15 letter or the grievances upon which his suspension was based. He also testified there was no follow up to his November 1 reply letter.

On January 26, 2011, according to Cea's deposition testimony, David Hoovler ("Hoovler"), a Town Board member, approached Cea in the Price Chopper parking lot to greet him. Cea declined to shake Hoovler's hand, stating they should see each other only in court because Hoovler purportedly was involved in booting Cea off the station. Hoovler purportedly replied that he only played a small part and boasted that Brabenec would be Supervisor for as long as he wanted. Brabenec testified hearing from Hoovler sometime in 2010 that Hoovler and Cea had interacted at the Price Chopper. Brabenec did not remember the substance of this conversation with Hoovler.

**II. SUMMARY JUDGMENT STANDARD**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue[4] of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co.*

---

[4] As the 2010 amendment to the Rule replaced "issue" with "dispute" because the term "better reflects the focus of a summary judgment determination," Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments, the terms are used interchangeably.

*v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Id.* at 250.

"[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980))).  However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## III. EVIDENCE OF FIRST AMENDMENT VIOLATION

The issue in the instant action is whether Cea's removal from station membership by Access 23 violated his First Amendment right to free speech, as applied to the states by the Fourteenth Amendment.  *See Murdock v. Pennsylvania*, 319 U.S. 105, 108 (1943).  Under the

First Amendment, state and local governments are prohibited from making laws "abridging the freedom of speech." U.S. Const. amend. I.  Violations of this right are actionable against defendants who acted "under color" of state law.  42 U.S.C. § 1983.  "[T]he First Amendment, the terms of which apply to government action, ordinarily does not itself throw into constitutional doubt the decisions by private citizens to permit, or to restrict, speech." *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 737 (1996).  This is true even where the private actor is a state-regulated entity, *id.*, or receives substantial funding from the government, *Rendell-Baker v. Kohn*, 457 U.S. 830, 839–43 (1982).

For actions by non-state actors to be imputed to the state, a plaintiff must demonstrate "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action . . . may be fairly attributed to the State itself."  *NCAA v. Tarkanian*, 488 U.S. 179, 192 n.12 (1988) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party may be held liable if it was "a willful participant in joint activity with the State or its agents").  Thus, the involvement of state officials such as Potter and Brabenec in a conspiracy with a private party such as Access 23 to deprive Plaintiffs of a constitutional right would be sufficient to hold the private party and the state officials liable under the First Amendment.  *Adickes*, 398 U.S. at 152.

Potter and Brabenec each assert there is no admissible evidence that would demonstrate such a conspiracy.  Plaintiffs' evidence of a conspiracy to deprive Cea of his right to free speech consists solely of four hearsay statements.  *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  First, Bowley and the three affiants assert that at the August membership meeting they heard Keys

state that Brabenec told Keys the Town would help fund the station if it removed Cea's show. Second, Bowley and one affiant assert that at the same meeting Russo stated that Potter said the City would not renew the station's lease unless Cea's show was removed, the second affiant asserts Keys made this statement instead of Russo, and the third affiant asserts both Keys and Russo made this statement. Third, Cea testified that Ortiz told him over the phone that his show was being removed by Potter and Brabenec, who had taken over the station. Fourth, Cea testified that Russo told him over the phone that Potter and Brabenec were upset with him.

Under the rule against hearsay, the above statements are admissible only if a federal statute, the federal rules of evidence, or other rules of the Supreme Court allow admission. Fed. R. Evid. 802. Furthermore, as each of these statements consists of hearsay within hearsay, to be admissible against Potter and Brabenec,[5] the only parties moving for summary judgment, each layer must conform with an exception or exclusion to the rule. Fed. R. Evid. 805. Finally, even if the statements are admissible, to defeat the motions for summary judgment, they must also be sufficient to demonstrate the existence of a genuine dispute of material fact as to whether Potter or Brabenec were involved in a conspiracy to deprive Cea of his right to free speech. *See* Fed. R. Civ. P. 56(c)(1). There is no dispute that Access 23 removed Cea's show from the air and expelled him from the membership.

Plaintiffs address one layer of hearsay by arguing that the statements made by Keys, Russo, and Ortiz "are admissions as to their own unconstitutional conduct in that they concede that the pressure placed upon them by elected officials informed the decision to rid the station of

---

[5] As evidence may be admissible against one party but not another, admissibility against Access 23 is irrelevant for purposes of Potter and Brabenec's motions for summary judgment. *Cf.* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party . . . but not against another party . . . the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

Cea." (Pl.'s Opp'n Br. 11–12.)  Thus, according to Plaintiffs, the statements "establish their own principal's [i.e., Access 23's] constitutional culpability." (*Id.* at 12.)  Plaintiffs then address the second layer of hearsay by claiming the statements are admissible against Potter and Brabenec "because the underlying statements are admissions against interest." (*Id.*)

      Disregarding Plaintiffs' improper description of party admissions in addressing the second layer of hearsay, *see* Fed. R. Evid. 801(d)(2)(A) (deeming admissible statements offered against an opposing party that were "made by the party in an individual or representative capacity"), the Court notes that this layer conforms to the party admission exclusion because Potter and Brabenec purportedly made them.  As to the first layer, however, Plaintiffs' arguments concerning Access 23's culpability are irrelevant.  *Cf.* Fed. R. Evid. 105.  Plaintiffs fail to identify any rule allowing them to clear this first layer of hearsay regarding admissibility of the statements as against Potter and Brabenec.  Instead, they focus their arguments on the statements' admissibility as against Access 23, for which Keys, Russo, and Ortiz are purportedly agents.  *See* Fed. R. Evid. 801(d)(2)(D) (statement "offered against an opposing party" is admissible if "made by *the party's agent or employee* on a matter within the scope of that relationship and while it existed").  Plaintiffs make no argument as to how Access 23's agents are also agents of Potter and Brabenec.  In addition, Plaintiffs' assertion that the statements evince Keys, Russo, and Ortiz's state of mind when they made them, *see* Fed. R. Evid. 803(3), has no bearing on whether Potter or Brabenec's state of mind is implicated.[6]  Finally, Plaintiffs characterize the statements made by Keys, Russo, and Ortiz as "admissions as to their own unconstitutional conduct." (Pl.'s Opp'n Br. 11-12.)  These statements, however, are not non-

---

[6] The Court makes no finding as to the accuracy of Plaintiffs' assertions regarding the statements' admissibility against Access 23.

12

hearsay admissions because the declarants are not parties, *see* Fed. R. Evid. 801(d)(2)(A), nor are they admissible under the hearsay exception for declarations against interest because there has been no allegation or showing that the declarants are unavailable witnesses, *see* Fed. R. Evid. 804(b)(3). Thus, Plaintiffs have no admissible evidence tending to demonstrate that Potter or Brabenec were involved in a conspiracy to deprive Cea of his right to free speech.

Accordingly, as Plaintiffs do not raise a genuine dispute of material fact, summary judgment must be granted.

## IV. CONCLUSION

For the reasons stated, Potter and Brabenec's motions for summary judgment are GRANTED. The Clerk of Court is respectfully directed to terminate the motions (Docs. 33 & 62) and terminate Potter and Brabanec as defendants in this action.

Dated: September 8th, 2014
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge